We'll hear the next case on the calendar, New Jersey Carpenters Health Fund. May it please the court. Christopher Johnson from McCool Smith for the appellants, FHFA and Freddie Mac. As conservator, FHFA has complete control over the GSEs, Freddie Mac and Fannie Mae. But FHFA cannot control when another person elects to sue one of the GSEs or otherwise involve it in litigation. When that happens, FHFA has the right under the Housing and Economic Recovery Act to a 45-day stay of proceedings upon request. Can I ask a simple factual question, I guess? The appellant's opt-out request, the first opt-out request, was late, is that right? Correct. And it was thereafter that the appellants moved for the HERA, H-E-R-A, stay, the 45-day stay. Correct. How does a stay reimpose a time limit? I mean, I understand a stay is a stay, but how does it work retroactively to change a time limit that's already run? So that is a substantive question as to the effect of the stay that we presented preliminarily to the district court. We think that the district court has not received full briefing on the issue. But to answer Your Honor's question, the opt-out date was not a fixed date. It was a date that was keyed off the final approval hearing, 28 days before the final approval hearing. The final approval hearing happened to be set for September 13, 2017, which made opt-outs due on August 16th. The court's order, which, by the way, the class parties drafted. So this wasn't the court's crafting. But the court's order, the preliminary approval order, acknowledged that the final approval hearing date could change. It happened to have been set for September 13, but it could change. So it was not written in stone. And so one of the arguments that we want to make to the district court below is that our entitlement to a stay delays the final approval hearing by 45 days, which would make an August 31st opt-out time limit. Let me ask you this. You've gotten your 45 days and more of delay as a result of this proceeding. The hearing hasn't taken place or anything like that. Why isn't this whole thing moot? So it's not moot, Your Honor, because this court can still grant concrete relief. We have a continuing interest in the action, both, I'd say, directly because- But you're appealing the denial of a stay. Correct. Because you say you were entitled to 45 days. Correct. As a result of the delay in the hearing because of this appeal, you've gotten 45 days. Why should we hear anything else at this point in the case? This is an appeal from a denial of a stay. You've effectively gotten the stay. So there are a few parts to the answer. One, I would say, is that the district court clearly sees a distinction between the statutory 45-day stay that the court denied and the discretionary stay pending appeal that it granted. But your argument, which is really what you're all about here, which is the question of your ability to appeal this or opt out in this whole thing, now you can make your argument, and if you succeed, fine. If you don't succeed, you can appeal that. Correct. But this court can still grant us relief. What kind of relief? I mean, we are not the district court in terms of granting you relief. We're hearing your appeal from the denial of a stay. Your Honor, the reason we're here one year later- What kind of relief do you want from us? What we want is a reversal of the lower court's order because the GSEs are still in conservatorship. They can be sued tomorrow or the day after, any day, and FHFA needs the right to invoke its 45-day stay right at any time in any litigation that gets filed. And right now, that right is under the cloud of the lower court's authority. But we don't know that there will be such a suit, and we don't know that you will feel the need for 45 days in any of those circumstances, so it seems to me to be somewhat hypothetical. Is there something more to the record that I didn't note? It has everything to do with the systemic significance of the GSEs to the national economy, and FHFA charged with preserving and conserving the assets of the GSEs. And so because of the breadth and extent of the GSEs' operations, we think it is highly likely that the GSEs are going to be sued in the future. And for so long as they are under conservatorship- But in the posture of this case, is that something that we need to decide? I think it's really an explanation of why we're here. In response to Judge Raji's question, I'm still having trouble understanding why you haven't gotten what you ostensibly sought. It is because there is a difference, as the district court seems to acknowledge, as I think the plaintiffs seem to acknowledge, between the statutory state to which we were entitled, which was supposed to give us breathing room at the outset of the litigation, and the stay that was granted pending appeal. The district court said, and you say this and you acknowledge this in your brief, that even if it had granted the stay, it would not set back the clock and render Freddie Mac's opt-out request timely because, and I quote, this isn't how the preliminary approval order works. So your view is that, I take it, that the district court's interpretation of its own order is incorrect or is flawed. And if that's so, what's the standard? Don't we review a district court's interpretation of its own order, generally under an abusive discretion standard? I see my time is up. No, please. So in a scenario where the district court basically just adopted an order that was drafted by the class parties, as the record does reflect, that order is not reviewed on an abusive discretion standard. We are seeking a reversal of the lower court's order, which we think this court can still grant us that relief. But what I would say is that if this court did believe that this action or this appeal is now moved, then the court should vacate the order below under Munsonware because, as I said at the outset, the real issue for FHFA here is that it has a continuing need for this 45-day stay in the future. This sounds like an echo of an evading review argument, that even if it's moved, it's appealable. Is that what you're talking about? So, yes, we do think that the issue is not moved because the court can still grant relief. But if the court thought it was moved, we think that it is still reviewable under the capable repetition. Is that what you were just talking about when you were talking about all the different similar lawsuits? Yes, although even if the court were to conclude that the action were moved, it can and we believe should vacate the lower court's order. To get to where you're going, wouldn't we have to go in bank on video tutorial services, which you say is incorrectly decided? So I do not believe that the same-party standard was applied in Denon and in video tutorial services. Both of those cases were actions between private parties. We searched for this. We could not find a single case where the same-party standard was applied against a government agency as the complaining party. And, in fact, Praxis is a good example of that standard not being applied against a government agency as a complaining party. So there are three scenarios. One would be an action between private parties like Denon or video tutorial. Another scenario would be an action where someone is seeking relief from the government. And there, the government is always going to be on the other side, so there would be same parties. This scenario is different from those two because here it is the government agency seeking to enforce its operating statute. And it is a complaining party. And we have not found any scenario in which the same-party standard was applied against the government in that scenario. I have a question for you picking up on Judge Sachs' view about whether this is appropriately heard on collateral appeal because of it presenting an unreviewable question. My understanding is that you sought to extend the hearing because if the hearing date was pushed forward, you would be able to claim that your opt-out request was timely, right? That is one of the reasons, yes. You've now achieved that. So you have the argument down below that your opt-out request is timely because this hearing has not taken place yet and it's going to have to be rescheduled. Why should we hear you on that issue? That issue is not incapable of review. The district court will either agree with you or not agree with you, and you can appeal that. There is a slightly broader issue that is inextricably linked to the district court's order. And that is that the district court denied our request for a 45-day stay because the court did not believe that HERA applied to class actions. Right, but who cares now that you've achieved the extension that is the basis for your argument that your opt-out request is timely? Because there are other aspects of the HERA statute that we think are relevant to the district court's proceedings. On what theory do you get collateral appeal on that? Well, we think that this action is reviewable now for the reasons I said. I think that praxis is good authority on that. And we think it important that the court reverse not only to grant us the concrete relief that we've requested, but also to instruct the district court that HERA does apply to class actions because, while I don't want to speak for the district court, there is a reason that the court— But that's reviewable later on. I mean, you are on interlocutory appeal. You have to show that you have a live claim, and you have to show a theory on which we would hear it on an interlocutory basis. And I thought your only interlocutory basis was that this extension question was not going to be reviewable on direct appeal. Well, we don't think that it is reviewable on direct appeal because, by that time, the breathing room to which we were entitled at the outset of the case is no longer available. But the district court— You've gotten it. Am I missing something? You've gotten what you wanted here, which is an extension on the hearing date. Your Honor, I think it has everything to do with the distinction that the lower court appears to— The HERA statute in this provision applies to a class action because there's no other way to interpret why it would deny us a 45-day stay and let us appeal this while granting us a stay pending appeal. We only wanted 45 days. The court could have granted that to us, but instead, it stayed proceedings specifically to allow us to bring this issue to this court, which, with all respect to the lower court, I think indicates that the lower court is looking for guidance as to whether HERA applies to class actions. We believe it does, and we believe that the lower court— It's not unusual—I don't blame the district court for wishing it has—wishing to have guidance as soon as possible so the district court doesn't wind up wasting time and being reversed later on review. That happens all the time, but that's not alone enough of a reason for an interlocutory appeal. Otherwise, we would have nothing but. I understand, and I think for the reasons that we briefed, we believe that this court has jurisdiction under the collateral order doctrine, that the issue is not moot because of the continuing interest. If it is deemed moot, it falls within the capable of repetition standard, but under any circumstances— If we disagree with you and say you lose, you're not going to—I'm sure you're not going to say, well, darn, better luck next time. You're going to continue this case. You're going to go back to the district court, and the litigation will continue. Isn't that likely true? You don't have to promise, but isn't that likely true? Yes, but because of the FHFA's continuing conservatorship over the GSEs, what it really needs is a reversal or vacator of the lower court's order so that any effort that FHFA might make to invoke that statute in the future, invoke that stay, is not under the cloud of lower court's authority. We don't want a future court, under circumstances we cannot now predict, to deny FHFA a 45-day stay because the Southern District of New York— But that happens all the time. District courts issue rulings. Parties settle cases after that. The district court ruling stays on the books. It has its limited effect. I mean, what you're saying to us is we don't want any authority out there that suggests we're limited. I mean, it wouldn't be controlling. I don't understand why that would be a ground for us to grant an interlocutory appeal of this issue. Your Honor, I think my point is that if the court does not believe that this appeal is now justiciable, that under Munsonware and even under Denin, the same party's case, Denin v. Connecticut Interscholastic, the Second Circuit, in finding that that action was moved, vacated the judgment below. And so under Munsonware and Denin, if this court decides that this appeal is not justiciable, we think that the proper remedy is to vacate the order below, and then we can continue to litigate issues below, but FHFA can go forward in its conservatorship of the GSEs without having the cloud of that lower court opinion. So that would be dismisses, moves, and the order of the district court is vacated? Correct. You do understand that would not preclude the district court in that next case in which you saw 45 days from saying you're not entitled to it, and then you would have the controversy again? Understood. Okay. Understood. But it wouldn't have authority to require it. We're clear about what it is you're seeking. Very good. It would be nice because you would just have to put new names on these briefs, and you could continue because it would be the same issue. Thank you. Thank you. May it please the Court, Joe Laitman for the appellee New Jersey Carpenters. First of all, I just want to say at the outset the way the issue was framed of the decision of the district court, that it was somehow saying that HERA never applies to class actions is not what the court ruled. What the court ruled was if the regulated entity is not a party, if you wait nine years after the appointment of the conservator, those circumstances make HERA not applicable. Let me ask you about that. As I understand the Supreme Court's decision in Devlin, when an entity is a party can depend on when it has a right to be heard in the matter. What right did the appellant have to be heard until it was given notice that there were going to be these class proceedings? Well, it was given notice in August. Once it was given the notice of the hearing, then I understand. But we're not talking nine years. It had no right to be heard until there was the possibility of a class settlement. Or am I missing something? First of all, Devlin was very narrow in the sense that it was limited to giving an objecting class member the status of a party only for purposes of appealing the final approval of a settlement. That was the purpose. An objection is by no way, shape, or means that. It is simply an objection. And I think it's worth pointing out, this objection on its face was defective, as we pointed out in a brief. Those are different arguments. I'm asking you now to deal with the question of whether and when they could reasonably be viewed as becoming a party. And I'm asking you why it isn't reasonable under Devlin to view them as becoming a party when they had the right to be heard with respect to that settlement. Well, they could have moved at any point after May 9 when the settlement, the class settlement. It could be a year. May 9 of, I'm sorry, May 9 of 2017 when the preliminary approval order was announced, the summary judgment, the summary publication was issued to the class. And by the way, the FHFA had been citing this case in their briefs since 2012. So this is a case they had specific knowledge of. So the idea is here when you talk about when they become a party, it's when Freddie Mac, when you look at the cases where a stay was granted, the Curios case and the Sadowski case, those are cases where Freddie Mac was a party either in a derivative action or a direct party in a 10B action. And appropriately with the HERO Statutory intent, the conservator came in where one of the conservatees was a party and got the stay. That is radically unconnected to these facts. In these facts, there is no party. And there's a reason, Your Honor, why they didn't intervene as a party. Because up until the day before the settlement hearing, FHFA was representing to the district court that they had never been given notice. So what they were trying to do was have both sides of the argument. They were trying to object, even though it wasn't a bona fide objection. They filed a late opt-out, which is defective. So they were trying to go along on the one hand with the procedure of the district court because they thought they could make a bona fide argument that they never got notice. By September 12, the day before hearing, they learned that they did get notice. So now they run to court under HERA trying to claim, you know what, we can do an end run around our defective late filing. And the end run is we're going to get this stay, push back the hearing. And then their interpretation, which we believe is incorrect of the order, their interpretation is all of a sudden our defective opt-out becomes a bona fide opt-out. There is no way under any of the case law interpreting B-10 or any of the legislative history that Freddie Mac is allowed to cure its negligence by relying on HERA. That is absolutely beyond any, that's the most contorted interpretation of the statute. So your view is that the provision, help me understand this, that the provision does not, would not limit the number of stays that a conservator could request? It would not limit it as long as it acted in a timely way, just like it said in praxis in the Third Circuit, just like the Fifth Circuit said in Waitley. If the conservator acts in a reasonable time frame after their appointment, because that's the language of B-10, after the appointment of the statute, if they act in a timely way, yes, they can get as many as they want. And how long would that stay last? The statute is ambiguous. I don't know what it is. What's your answer? But my answer is I look at Curicos and I look at Sadowski. Those were all within four months of FHFA being appointed as conservatory. That's reasonable. Five years, nine years, that is not reasonable. But it is a reasonableness standard. That's, I think, how the common sense nature of what Waitley said and what praxis said, the Third and the Fifth Circuit, was they said, look, there's got to be, when it talks about after the appointment of the conservatory, it doesn't mean forever that they can sit on their hands. Here, it's particularly egregious that they did nothing because, one, they knew about the case. They were citing our case in their papers for five years. And then to come along and say, you know, we didn't get notice to the district court as the basis for their objection and late opt-out claim, that was false. So the ruling of the district court was on all fours. It was saying, look, you did not comply with B-10. You were not a party. This was way after. And the statute was never designed for you to do an end run around your negligence. So we believe the district court ruling was on all fours of these unique, narrow facts where the FHFA had been sleeping for years. They got notice. They didn't do anything about it. And now they want to be treated differently from every other class member because of a statute that was designed for an entirely different purpose. And that's for the reason we think is affirmed. The other issue that is particularly troubling about this B-10 argument is that they have, as counsel just indicated, integrated it inextricably with a broader argument under F, 4617F and B-2. And they're arguing now, you know what HERA means? HERA means that we never have to abide by deadlines. Well, they don't even believe that. Why did they file an opt-out request? Why did they file an objection if they actually thought that what HERA says is you're not entitled to do it? Should we affirm or should we dismiss as moot? Dismiss the appeal as moot. We believe that the court should affirm the district court ruling because we believe that the court did have concern. It was a very unusual situation where this court denied the delay of the final settlement approval hearing, but on its own, the district court said, I'm going to defer for this appeal. So I think the district court is looking for an affirmance substantively, and the affirmance is the appropriate determination on these very, very unique facts where there's an attempt to interpret HERA far beyond any reasonable interpretation of that statute. Thank you. May it please the court, Alan Turner representing the defendants' appellees. I'd like to begin with the two threshold issues as to whether this court has jurisdiction. If we find it related to that, if let's say that we were to say that this court has jurisdiction as moot, why shouldn't we just vacate the district court's order? Whether or not to vacate the district court's order is clearly within this court's discretion, but the kinds of situations where this court and others have exercised that discretion previously is where there is some precedent that has been entered in the district court that has some broader value. Here it's a narrow issue with respect to whether a stay should have been entered. And also, importantly, in situations where that precedent is going to stay on the books. Here we have a situation where, as this court has recognized, FHFA will presumably, if it loses in the district court, be back here again in front of another panel, arguing that the effect of the delay in the final approval hearing, in fact, cured its untimely opt-out. So the same issues that they are arguing now are going to be back before this court again, which is exactly the reason why this appeal is moot. But it also means that the reasons that otherwise would motivate a vacater of the district court's decision are really not present here. So that's how I would answer Your Honor's question on that issue. As to the question whether this appeal is moot, there has to be a live case or controversy. That's a constitutional requirement. FHFA has to either show that it has a concrete, continuing interest in the outcome, or it has to come within the narrow, capable-of-repetition-yet- evading-review exception. It satisfies neither. It has no concrete, continuing interest in the outcome of this appeal. Three hundred and fifty-nine days have passed since the district court's order, far more than the 45-day stay that it sought. It is not a difference in kind, as FHFA's counsel suggests. It's merely the passage of time, and far more time than it originally sought. Does it nonetheless come within the capable-of-repetition-yet-evading . . . That's the argument, that it's therefore moot? I'm sorry, Your Honor? Therefore it's moot, you're saying? It is moot, yes. And then . . . I'm just wondering what part of the argument you are . . . There are two parts. There is no concrete, continuing interest in the outcome, and it does not fall within the capable-of-repetition-yet-evading-review standard. The Supreme Court has, and this Court, have applied very narrow, strict standards to this capable-of-repetition-yet-evading-review exception. There has to be a reasonable expectation, or a reasonable likelihood, that the same complaining party will be subject to the same action again. And as Judge Katzmann noted, this Court, in both the Video Tutorial Services case and in the Denon case, held that it must be the same parties that would have the same issue and dispute again. That simply will not happen because, in fact, this Hearest Day, this 45-day stay, is a one-time shot if it is available. I think that is clear under the statute and under the cases under the FIREA statute as well that have looked at that issue. The . . . It's a one-time shot that has already been taken and expired? It has not been taken at all because the District Court did not grant it. It's not available. But in any event, this issue will not come up again between the same parties. This Court should not change the same parties' requirement. It would need to go on bank in order to do that. The question here, even if that looser standard were applied and FHFA were given the benefit of its argument that, well, we are a conservator, we're likely to have the same kind of issue come up again, the facts simply do not meet that standard. It is ten years to the day that FHFA was appointed as conservator of Freddie Mac and Fannie Mae, September 6, 2008. This issue, the application of the Hearest Day to an unnamed class member that is a conservatee, has never previously come up in ten years. Moreover, in the 29 years that the FIREA statute has been in place with respect to the FDIC, again, the same issue has never come up. So the standard for the capable of repetition yet evading review exception is simply not met. If I can, briefly, I'd like to address the question whether this interlocutory appeal falls within the collateral order exception. Again, that is a very narrow exception. It is a small class of cases that the Supreme Court and this Court has recognized as fitting within it. And as this Court said in the Fisher case, quoting the Supreme Court in Will v. Halleck, the Supreme Court has been asked many times to expand the small class of collaterally appealable orders, but it has instead kept the class narrow and selective in its membership. Issues such as the qualified immunity of a government official, the denial of a state's right to an 11th Amendment immunity, or the double longevity of a criminal defendant. There is no class for denials of stays that the Supreme Court or this Court has recognized. It simply does not apply here. Unless Your Honors have any other questions. Thank you. Thank you. Thank you, Your Honors. There are four points I want to make. The first is in response to the statement from New Jersey Carpenters Council that FHFA was given notice. FHFA was not given notice. Freddie Mac received notice. Someone in the wire room received notice. FHFA's 10 years ago today, when FHFA put Freddie Mac into conservatorship, Freddie Mac assumed complete control of all right title and interest to Freddie Mac's assets. And the class is drawn in a way that encompasses Freddie Mac's  assets. And the class plaintiffs knew about the conservatorship. They had excluded FHFA and conservatees from other classes. The defendants knew about the conservatorship because they had been fighting the— Let me be clear on this. Your stay provision talks about when the regulated entity becomes a party. Correct. And so that's Freddie Mac. Correct. But with respect to whether FHFA was negligent, FHFA did not receive notice. FHFA learned about the opt-out deadline on August 29th. What do you rely on for the proposition that when an entity is in receivership that the notice has to be given to the receiver rather than the entity? With respect, it's conservatorship as opposed to receivership. Conservatorship. I'm sorry. I'm sorry. It happened. It flows from the way they drew the class, that it was that the interests—Freddie Mac was a purchaser of bonds. The right title and interest to those bonds, FHFA succeeded to that. But the more important part, I think, is that the release that would be a result of the class settlement is a release on a claim that currently belongs to the federal government. They're trying to impose—and I can't think of a single case where the federal government's claims have been released by virtue of a class action settlement. So FHFA never received notice. The statute entitling us to 45 days is clear on its face. There is no time limit within which that right needs to be invoked. It is not a reasonableness standard. It is when FHFA, in its discretion, thinks it is necessary. And I think the best evidence of that flows from the supplemental briefing that the Court requested last month. In passing HERA, Congress repealed and replaced the Safety and Soundness Act of 1992. And Section 1392A of the Safety and Soundness Act had a conservator's stay provision. And that conservator's stay provision clearly says that the conservator could only invoke the stay within 45 days of conservatorship. That language got repealed by HERA. And so it was replaced with clear language that has no time limit. But the fact that Congress removed a time limit we think is very clear evidence that there is no time limit. With respect to what they say is Freddie Mac's negligence, the federal government can't have its rights restricted by negligence of a private party. I cite for that Brock v. Pierce County, 476 U.S. 253. Supreme Court, quote, has frequently articulated the great principle of public policy applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided. And so if Freddie Mac was negligent, that can't be a basis for restricting the federal government's rights. And finally, what I would say with respect to the vacator issue, Mr. Turner said that that is only applied where there is a broader value at issue. This is statutory right of federal agency managing two companies that are systemically important to this nation's economy. It has a statutory right. There is a broader issue here, and that is the ability of FHFA to invoke that right in the future. And so even if we continue litigating this case below, that issue, that decision will remain on the books and could be used against the FHFA in the future, and that is what we want vacated. Thank you. Thank you all for your arguments. The Court will reserve decision.